**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: _____

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

       Plaintiffs,

vs.

LEE RONALD FERGUSON, M.D.,
INTEGRATED COMMUNITY SUPPORT
LLC, JULIO RODRIGUEZ, JAX CARRILLO,
SANCHEZ HEALTH CARE SERVICES
CORP., CARLOS A. AGUILAR SILVERA,
LUIS ACOSTA SOUTO, YASEL
BALMASEDA VAZQUEZ, COMPLETE
MEDICAL & RESEARCH CLINIC CORP.,
DIRIAN GARCIA, YORDANYS PORTAL,
PROFESSIONAL HEALTH SOLUTIONS
INC., and EUGENIO CLEMENTE LINARES,

       Defendants.

_____/

                                   **Jury Trial Demand**

## COMPLAINT

       Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), sue

Defendants and allege as follows:

       1.     This action seeks to recover more than $1,450,000.00 that Defendants wrongfully

obtained from GEICO by submitting thousands of fraudulent and unlawful no-fault ("no-fault",

"personal injury protection", or "PIP") insurance charges through Defendants Integrated

Community Support LLC ("Integrated"), Sanchez Health Care Services Corp. ("Sanchez Health

1

Care"), Complete Medical & Research Clinic Corp. ("Complete Medical"), and Professional Health Solutions, LLC ("Professional Health"), relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services and goods, including purported examinations and physical therapy services (collectively the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies.

2.      In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending fraudulent and unlawful PIP claims that Defendants have submitted through Integrated, Sanchez Health Care, Complete Medical, and Professional Health because:

(i)     at all relevant times, Defendants operated in violation of Florida law, including Florida's Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"), Florida's False and Fraudulent Insurance Claims Statute, Fla. Stat. § 817.234(7) (the "False and Fraudulent Insurance Claims Statute"), and Florida's Physical Therapy Practice Act, Fla. Stat. § 486.011-486.172 ("the Physical Therapy Act);

(ii)    the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

(iii)   in many cases, the Fraudulent Services were performed – to the extent that they were performed at all – by massage therapists, and Florida law prohibits PIP insurance reimbursement for massage or for services provided by massage therapists;

(iv)    in many cases, the billing submitted through Integrated, Sanchez Health Care, Complete Medical, and Professional Health misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and was submitted in violation of the billing requirements set forth in the Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law");

(v)     in many cases, the Fraudulent Services never were provided in the first instance; and

2

(vi)    the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

3.    As set forth below, Defendants at all relevant times have known that:

(i)    Defendants operated in violation of Florida law, including the Clinic Act, the False and Fraudulent Insurance Claims Statute, and the Physical Therapy Act, and therefore were ineligible for PIP reimbursement;

(ii)    the underlying Fraudulent Services were not medically necessary, and were provided – to the extent provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

(iii)    in many cases, the Fraudulent Services were performed – to the extent that they were performed at all – by massage therapists, and therefore were ineligible for PIP reimbursement;

(iv)    in many cases, the Fraudulent Services were performed – to the extent that they were performed at all – by individuals who lacked the requisite licenses necessary to perform the services, and therefore were ineligible for PIP reimbursement;

(v)    in many cases, the billing submitted through Integrated, Sanchez Health Care, Complete Medical, and Professional Health misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and was submitted in violation of the billing requirements set forth in the No-Fault Law, rendering the charges ineligible for PIP reimbursement;

(vi)    in many cases, the Fraudulent Services never were provided in the first instance; and;

(vii)    the billing codes use for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

4.    As such, Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed to GEICO.

5.    The charts annexed hereto as Exhibits "1" – "4" set forth large, representative samples of the fraudulent and unlawful claims that have been identified to date that Defendants have submitted, or caused to be submitted, to GEICO.

6.      Defendants' fraudulent and unlawful scheme began no later than 2020, and has continued uninterrupted since that time. As a result of Defendant's fraudulent and unlawful scheme, GEICO has incurred damages of more than $1,450,000.00.

## THE PARTIES

### I.      Plaintiffs

7.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

### II.      Defendants

8.      Defendant Integrated is a Florida limited liability company with its principal place of business in Miami, Florida. Integrated was organized in Florida on January 1, 2020, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

9.      Defendant Julio Rodriguez ("J. Rodriguez") resides in and is a citizen of Florida. J. Rodriguez owned and controlled Integrated from September 23, 2021 to December 2, 2022, was the member of Integrated, and used Integrated as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

10.      Defendant Jax Carrillo ("Carrillo") resides in and is a citizen of Florida. Carrillo owned and controlled Integrated from November 25, 2022 to the present, is the member of Integrated, and used Integrated as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

11.     Defendant Lee Ronald Ferguson, M.D. ("Ferguson") resides in and is a citizen of Florida. Ferguson was licensed to practice medicine in Florida on December 20, 2018. Ferguson falsely purported to serve as a medical director at Integrated from October 2021 to the present, and purported to perform Fraudulent Services on behalf of Integrated.

12.     Defendant Sanchez Health Care is a Florida corporation with its principal place of business in Miami, Florida. Sanchez Health Care was incorporated in Florida on April 20, 2019, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

13.     Defendant Carlos A. Aguilar Silvera ("Silvera") resides in and is a citizen of Florida. Silvera owned and controlled Sanchez Health Care from November 18, 2021 to September 11, 2023, and used Sanchez Health Care as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

14.     Defendant Luis Acosta Souto ("Souto") resides in and is a citizen of Florida. Souto owned and controlled Sanchez Health Care from September 11, 2023 to the present, and used Sanchez Health Care as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

15.     Defendant Yasel Balmaseda Vazquez ("Vazquez") resides in and is a citizen of Florida. Vazquez owned and controlled Sanchez Health Care from July 31, 2024 to the present, and used Sanchez Health Care as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

16.     Defendant Ferguson falsely purported to serve as a medical director at Sanchez Health Care from November 2021 to the present, and purported to perform Fraudulent Services on behalf of Sanchez Health Care.

17.     Defendant Complete Medical is a Florida corporation with its principal place of business in Hialeah, Florida. Complete Medical was incorporated in Florida on February 22, 2021, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

18.     Defendant Dirian Garcia ("Garcia") resides in and is a citizen of Florida. Silvera owned and controlled Complete Medical from December 21, 2021 to April 6, 2022, and used Complete Medical as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

19.     Defendant Yordanys Portal ("Portal") resides in and is a citizen of Florida. Portal owned and controlled Complete Medical from April 13, 2022 to the present, and used Complete Medical as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

20.     Defendant Ferguson falsely purported to serve as a medical director at Complete Medical from September 2021 to the present, and purported to perform Fraudulent Services on behalf of Complete Medical.

21.     Professional Health is a Florida corporation with its principal place of business in Coral Gables, Florida. Professional Health was incorporated in Florida on June 27, 2022, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

22.     Defendant Eugenio Clemente Linares ("Linares") resides in and is a citizen of Florida. Linares owned and controlled Professional Health from September 2022 to the present, and used Professional Health as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

23.     Ferguson falsely purported to serve as a medical director at Professional Health from September 2022.

### III.     <u>Other Relevant Individuals</u>

24.     Although GEICO has not named them as Defendants in this Complaint, Natali Cruz Fernandez, L.M.T. ("Fernandez"), Yensel Perez Valdes, L.M.T. ("Valdes"), Lucinda Suarez Chong, A.P.R.N. ("Chong"), Marielys Diaz, R.N. ("Diaz"), Marilu Avila, A.P.R.N. ("Avila"), Susa Mesa Rodriguez, L.M.T. ("Mesa Rodriguez"), Judith Farinas Ramos, L.M.T. ("Ramos"), Roxana Rodriguez, A.P.R.N. ("R. Rodriguez"), Miladys Cabrera, L.M.T. ("Cabrera"), Mayulys Gallo, L.M.T. ("Gallo"), Ariocha Romero Hernandez, L.M.T. ("Hernandez"), Wilfredo Ruben Batista, A.P.R.N. ("Batista"), Annalie Campa, L.M.T. ("Campa"), Luismely Escobar Castillo, L.M.T. ("Castillo"), and Nahir Fraga, A.P.R.N. ("Fraga") are also relevant to understanding Plaintiffs' claims in this action.

25.     Fernandez is a licensed massage therapist, was employed by or associated with Integrated, and purported to perform many of the Fraudulent Services on behalf of Integrated.

26.     Valdes is a licensed massage therapist, was employed by or associated with Integrated, and purported to perform many of the Fraudulent Services on behalf of Integrated.

27.     Chong is a licensed advanced practice registered nurse, was employed by or associated with Integrated, and purported to perform many of the Fraudulent Services on behalf of Integrated.

28.     Diaz is a licensed registered nurse, was employed by or associated with Integrated, and purported to perform many of the Fraudulent Services on behalf of Integrated.

29.     Avila is a licensed advanced practice registered nurse, was employed by or associated with Integrated, and purported to perform many of the Fraudulent Services on behalf of Integrated.

30.     Mesa Rodriguez is a licensed massage therapist, was employed by or associated with Sanchez Health Care, and purported to perform many of the Fraudulent Services on behalf of Sanchez Health Care.

31.     Ramos is a licensed massage therapist, was employed by or associated with Sanchez Health Care, and purported to perform many of the Fraudulent Services on behalf of Sanchez Health Care.

32.     R. Rodriguez is an advanced practice registered nurse, was employed by or associated with Sanchez Health Care, and purported to perform many of the Fraudulent Services on behalf of Sanchez Health Care.

33.     Cabrera is a licensed massage therapist, was employed by or associated with Complete Medical, and purported to perform many of the Fraudulent Services on behalf of Complete Medical.

34.     Gallos is a licensed massage therapist, was employed by or associated with Complete Medical, and purported to perform many of the Fraudulent Services on behalf of Complete Medical.

35.     Hernandez is a licensed massage therapist, was employed by or associated with Complete Medical, and purported to perform many of the Fraudulent Services on behalf of Complete Medical.

36.     Batista is a licensed advanced practice registered nurse, was employed by or associated with Complete Medical, and purported to perform many of the Fraudulent Services on behalf of Complete Medical.

37.     Campa is a licensed massage therapist, was employed by or associated with Professional Health, and purported to perform many of the Fraudulent Services on behalf of Professional Health.

38.     Castillo is a licensed massage therapist, was employed by or associated with Professional Health, and purported to perform many of the Fraudulent Services on behalf of Professional Health.

39.     Fraga is a licensed advanced practice registered nurse, was employed by or associated with Professional Health, and purported to perform many of the Fraudulent Services on behalf of Professional Health.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interests and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

41.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

42.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

43.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of the Defendants reside and because this is

the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

**I.**     **An Overview of the Pertinent Law Governing No-Fault Insurance Reimbursement**

44.     Florida has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is embodied within the Florida Motor Vehicle No-Fault Law (the "No-Fault Law," Fla. Stat. §§ 627.730-627.7405), which requires automobile insurers to provide Personal Injury Protection benefits ("PIP Benefits") to Insureds.

45.     Under the No-Fault Law, an Insured can assign their right to PIP Benefits to health care services providers in exchange for those services. Pursuant to a duly executed assignment, a health care services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form").

46.     In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided.

47.     Pursuant to the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."

48.     Thus, health care services providers, including clinics licensed under the Clinic Act, may not recover PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

49.     Subject to certain limited exceptions that are not applicable in this case, the Clinic Act defines "clinic" to mean "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider."

50.     Pursuant to the Clinic Act, every clinic operating in Florida must – among other things – be licensed by the Florida Agency for Health Care Administration ("AHCA"), and appoint a physician as medical director or clinic director who must agree in writing to accept legal responsibility for certain enumerated activities on behalf of the clinic.

51.     Among other things, a clinic medical director must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action."

52.     In addition, a clinic medical director must "[e]nsure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license," and "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."

53.     Moreover, a clinic medical director must "review any patient referral contracts or agreements executed by the clinic".

54.     What is more, pursuant to the Clinic Act, no clinic may operate in Florida without the legitimate day-to-day supervision of a physician-medical director.

55.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this party but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable

11

and unenforceable. A person who knowingly makes or causes to be made an unlawful charge commits theft within the meaning of, and punishable as provided in, [Fla. Stat. §] 812.014."

56.    Thus, pursuant to both the No-Fault Law and the Clinic Act, clinics that operate in violation of the Clinic Act's medical director or other operating requirements are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

57.    Under the False and Fraudulent Insurance Claims statute, it is unlawful for a health care provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from PIP patients.

58.    Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

59.    Pursuant to the No-Fault Law, insurers such as GEICO are only required to pay PIP Benefits for "medically necessary" services. At the same time, a health care services provider, including a clinic organized under the Clinic Act, is only eligible to receive PIP Benefits for medically necessary services.

60.    Pursuant to the No-Fault Law, "medically necessary" means:

a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

(a) In accordance with generally accepted standards of medical practice;

(b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and

(c) Not primarily for the convenience of the patient, physician, or other health care provider.

61.     Prior to January 1, 2013, the No-Fault Law permitted health care services providers, including clinics licensed under the Clinic Act, to collect PIP Benefits for massage therapy and for services performed by massage therapists.

62.     However, the No-Fault Law was amended, effective January 1, 2013, to prohibit PIP reimbursement for massage or for services performed by massage therapists.

63.     Pursuant to the Physical Therapy Act: (i) massage therapists may not practice physical therapy, or hold themselves out as being able to practice physical therapy, unless they have an actual license to practice physical therapy, as opposed to massage therapy; and (ii) unlicensed and unsupervised individuals may not practice physical therapy, or hold themselves out as being able to practice physical therapy.

64.     Pursuant to the Physical Therapy Act and the No-Fault Law, insurers such as GEICO are not required to pay for any services performed by massage therapists, or for physical therapy services that are unlawfully performed by unlicensed and unsupervised individuals.

65.     Pursuant to the No-Fault Law, insurers such as GEICO also are not required to pay PIP Benefits:

(i)     For any service or treatment that is "upcoded," meaning that it is billed using a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed;

(ii)    To any person who knowingly submits a false or misleading statement relating to the claim or charges; or

(iii)   With respect to a bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law.

66.     The No-Fault Law's billing requirements provide that all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare & Medicaid Services ("CMS") for the completion of HCFA-1500 forms, as well as the guidelines

promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology ("CPT") codes.

67.    The instructions promulgated by CMS for the completion of HCFA-1500 forms require, among other things, that all HCFA-1500 forms set forth, in Box 31, the identity of the individual health care practitioner who personally performed or directly supervised the underlying health care services.

68.    To "directly supervise" a service, a health care practitioner "must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed." See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set.

69.    Insurers are not required to pay PIP Benefits to health care providers that misrepresent, in their billing, the identity of the individual health care practitioners who performed or directly supervised the underlying services.

## II.    Defendants' Interrelated Fraudulent Schemes

70.    Since at least 2020, and continuing through the present day, Defendants devised and implemented interrelated fraudulent and unlawful schemes pursuant to which they billed GEICO and other Florida automobile insurers millions of dollars for medically unnecessary, illusory, unlawful, and otherwise non-reimbursable services.

## A.    Defendants' Violations of the Clinic Act

71.    Because Integrated, Sanchez Health Care, Complete Medical, and Professional Health were subject to the Clinic Act, J. Rodriguez, Carrillo, Silvera, Souto, Vazquez, Garcia, Portal, and Linares could not lawfully operate Integrated, Sanchez Health Care, Complete Medical,

and Professional Health, respectively, unless they obtained clinic licenses for the respective clinics, and unless the clinics employed licensed physicians as their respective medical directors, who actually performed the required duties of the clinic medical directors.

72.     However, if Rodriguez, Carrillo, Silvera, Souto, Vazquez, Garcia, Portal, and Linares retained legitimate physicians to serve as Integrated, Sanchez Health Care, Complete Medical, and Professional Health's medical directors, any such legitimate physicians actually would be obligated to fulfill the statutory requirements applicable to clinic medical directors, which would impede Defendants' interrelated fraudulent schemes.

73.     Accordingly:

(i)     J. Rodriguez recruited Ferguson, who was a licensed physician willing to falsely pose as the legitimate medical director at Integrated, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to clinic medical directors at Integrated.

(ii)    Silvera recruited Ferguson, a licensed physician who was willing to falsely pose as the legitimate medical director at Sanchez Health Care, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at Sanchez Health Care.

(iii)   Garcia recruited Ferguson, a licensed physician who was willing to falsely pose as the legitimate medical director at Complete Medical, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at Complete Medical.

(iv)    Linares recruited Ferguson, a licensed physician who was willing to falsely pose as the legitimate medical director at Professional Health, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at Professional Health.

74.     Ferguson was never a genuine medical director for Integrated, Sanchez Health Care, Complete Medical, and Professional Health.

75.     Instead, from the beginning of each of Ferguson's associations with Integrated, Sanchez Health Care, Complete Medical, and Professional Health, he ceded all day-to-day

decision-making and oversight regarding health care services at the Integrated, Sanchez Health Care, Complete Medical, and Professional Health to their respective owners.

76. In keeping with the fact that Ferguson was never genuine a medical director for Integrated, Sanchez Health Care, Complete Medical, and Professional Health, Ferguson never legitimately conducted systematic reviews of Integrated, Sanchez Health Care, Complete Medical, and Professional Health's billings to ensure that the billings were not fraudulent or unlawful, and instead permitted Integrated, Sanchez Health Care, Complete Medical, and Professional Health to operate in the fraudulent and unlawful manner described herein.

77. What is more, though no Florida health care clinic may operate without the day-to-day supervision of a physician-medical director, Ferguson never provided legitimate, day-to-day supervision at Integrated, Sanchez Health Care, Complete Medical, and Professional Health, and in fact only occasionally was present at the respective clinics, if at all.

78. For instance, Integrated's October 2021 and April 2022 clinic licensing applications represented that Ferguson was only present at Integrated "1x a month to conduct medical director duties".

79. Similarly, Sanchez Health Care's December 2021 clinic licensing application represented that Ferguson was only present at Sanchez Health Care "[a]t least once a month as needed".

80. Likewise, Complete Medical's October 2021 and April 2023 clinic licensing applications represented that Ferguson was only present at Complete Medical "1x a month to perform medical director duties."

81. What is more, Professional Health's October 2022 clinic licensing application represented that Ferguson was only present at Professional Health "8 hrs per month".

82.     In the claims identified in Exhibits "1" – "4", Defendants falsely represented that Integrated, Sanchez Health Care, Complete Medical, and Professional Health were in compliance with the Clinic Act and eligible to receive PIP reimbursement in the first instance.

83.     In fact, Integrated, Sanchez Health Care, Complete Medical, and Professional Health were not in compliance with the Clinic Act, and were not eligible to receive PIP reimbursement.

**B.     The Unlawful Billing for Services Performed by Massage Therapists and Unlicensed/Unsupervised Individuals at Integrated, Sanchez Health Care, Complete Medical, and Professional Health, and Misrepresentations Regarding the Identities of the Treating Practitioners**

84.     Integrated, Sanchez Health Care, Complete Medical, and Professional Health billed for a limited range of health care services through Integrated, Sanchez Health Care, Complete Medical and Professional Health, primarily purported physical therapy services.

85.     Integrated, Sanchez Health Care, and Complete Medical also billed for purported patient examinations.

86.     As set forth in Exhibits "1" – "4", the substantial majority of the billing submitted through Integrated, Sanchez Health Care, Complete Medical, and Professional Health to GEICO was for purported physical therapy services, including hot/cold packs, therapeutic exercises, manual therapy, neuromuscular reeducation, iontophoresis, paraffin bath, and electrical stimulation.

87.     In the claims identified in Exhibits "1" – "4", the purported physical therapy services were unlawfully performed – to the extent that they were performed at all – by unlicensed and unsupervised individuals, and by massage therapists including Fernandez, Valdes, M. Rodriguez, Ramos, Cabrera, Gallo, Campa, and Castillo.

88.     Defendants were aware of the fact that they could not legally recover PIP Benefits for services performed by massage therapists or unsupervised and unlicensed individuals.

89.     As a result, and in order to conceal the fact that Fernandez, Valdes, M. Rodriguez, Ramos, Cabrera, Gallo, Campa, Castillo, and other massage therapists and unlicensed/unsupervised individuals performed the purported physical therapy services that were unlawfully billed through Integrated, Sanchez Health Care, Complete Medical, and Professional Health to GEICO, Defendants omitted any reference to Fernandez, Valdes, M. Rodriguez, Ramos, Cabrera, Gallo, Campa, Castillo, and other massage therapists and unlicensed individuals associated with Integrated, Sanchez Health Care, Complete Medical, and Professional Health on the HCFA-1500 forms that they used to bill for the putative physical therapy services.

90.     Instead, in the claims for physical therapy services identified in Exhibits "1" – "3", Integrated, Sanchez Health Care, and Complete Medical routinely and falsely listed Ferguson in Box 31 of the HCFA-1500 forms as the supposed provider or direct supervisor of the purported physical therapy services.

91.     Likewise, in the claims for physical therapy services identified in Exhibit "4", Professional Health routinely and falsely listed Fraga in Box 31 of the HCFA-1500 forms as the supposed provider or director supervisor of the purported physical therapy services.

92.     In fact, Ferguson and Fraga, who were simultaneously purporting to work at numerous health care practices at numerous locations, did not legitimately perform or directly supervise the physical therapy services in the claims identified in Exhibits "1" – "4", and could not have legitimately performed or directly supervised the physical therapy services.

93.     For example:

(i)     On June 1, 2022, Integrated, J. Rodriguez, and Ferguson purported to provide at least 58 individual physical therapy services to at least eight individual Insureds,

and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 14.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) two 45-minute initial examinations and one 20-minute follow-up examination that were performed on three GEICO Insureds at Integrated; and (b) at least 10 <u>additional</u> physical therapy services purportedly provided to at least two <u>additional</u> GEICO Insureds at Complete Medical, including at least 2.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 18.5 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on June 1, 2022.

(ii)     On September 13, 2022, Integrated, J. Rodriguez, and Ferguson purported to provide at least 31 individual physical therapy services to at least four individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 7.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) one 45-minute initial examination that was performed on one GEICO Insured at Integrated; and (b) at least 28 <u>additional</u> physical therapy services purportedly provided to at least four <u>additional</u> GEICO Insureds at Complete Medical, including at least 7 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 15.5 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on September 13, 2022.

(iii)    On February 13, 2023, Integrated, Carrillo, and Ferguson purported to provide at least 43 individual physical therapy services to at least five individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 10.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) two 20-minute follow-up examinations that were performed on two GEICO Insureds at Integrated and two 30-minute follow-up examinations that were performed on two <u>additional</u> GEICO Insureds at Complete Medical; and (b) at least 47 <u>additional</u> physical therapy services purportedly provided to at least five <u>additional</u> GEICO Insureds at Complete Medical, including at least 11.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the

Insureds throughout the services. In all, GEICO received billing for at least 24 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on February 13, 2023.

(iv)     On April 20, 2023, Complete Medical, Portal, and Ferguson purported to provide at least 47 individual physical therapy services to at least five individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 11.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) two 45-minute follow-up examinations that were performed on two GEICO Insureds at Complete Medical; and (b) at least 22 <u>additional</u> physical therapy services purportedly provided to at least three <u>additional</u> GEICO Insureds at Integrated and DD Rehabilitation Inc., including at least 5.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 18.75 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on April 20, 2023.

(v)      On April 27, 2023, Complete Medical, Portal, and Ferguson purported to provide at least 18 individual physical therapy services to at least two individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 4.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) two 30-minute follow-up examinations that were performed on two <u>additional</u> GEICO Insureds at Integrated; and (b) at least 63 <u>additional</u> physical therapy services purportedly provided to at least two <u>additional</u> GEICO Insureds at Integrated, including at least 15.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 21.25 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on April 27, 2023.

(vi)     On May 16, 2023, Professional Health, Linares, Ferguson, and Fraga purported to provide at least 33 individual physical therapy services to at least four individual Insureds, and falsely contended in the resulting bills to GEICO that Fraga personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 8.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Fraga also purported to personally perform, or at least directly supervise: (a) two 30-minute

follow-up examinations that were performed on two <u>additional</u> GEICO Insureds at River Medical Center; and (b) at least 125 <u>additional</u> physical therapy services purportedly provided to at least 11 <u>additional</u> GEICO Insureds at Life Homestead Medical Center, Miami Specialty Treatment Center, Inc., MO Medical Center, Inc., and Canitas Medical Centers, Inc., including at least 31.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 40.25 hours of services that Fraga purported to personally perform, or at least directly supervise, at multiple different locations on May 16, 2023.

(vii)     On July 14, 2023, Professional Health, Linares, Ferguson, and Fraga purported to provide at least 20 individual physical therapy services to at least two individual Insureds, and falsely contended in the resulting bills to GEICO that Fraga personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Fraga also purported to personally perform, or at least directly supervise: (a) one 45-minute initial examination and one thirty-minute follow-up examination that were performed on two <u>additional</u> GEICO Insureds at River Medical Center; and (b) at least 96 <u>additional</u> physical therapy services purportedly provided to at least 10 <u>additional</u> GEICO Insureds at Adventure Medical Center, Larkin Behavior Health, Miami Specialty Treatment Medical Center, Inc., Principle Care Center, Inc., South Miami Medical Center, Inc., and Canitas Medical Centers, Inc., including at least 24 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 30.25 hours of services that Fraga purported to personally perform, or at least directly supervise, at multiple different locations on July 14, 2023.

(viii)     On August 21, 2023, Complete Medical, Portal, and Ferguson purported to provide at least 18 individual physical therapy services to at least two individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 4.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) four 45-minute initial examinations that were performed on three <u>additional</u> GEICO Insureds at Integrated; and (b) at least 80 <u>additional</u> physical therapy services purportedly provided to at least six <u>additional</u> GEICO Insureds at Integrated, including at least 20 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 27.5 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on August 21, 2023.

(ix)    On September 19, 2023, Integrated, Portal, and Ferguson purported to provide at least 86 individual physical therapy services to at least five individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 21.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) two 45-minute initial examinations that were performed on one GEICO Insured at Integrated and one 30-minute follow-up examination that was performed on one <u>additional</u> GEICO Insured at Complete Medical; and (b) at least 19 <u>additional</u> physical therapy services purportedly provided to at least two <u>additional</u> GEICO Insureds at Integrated, including at least 4.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 27.5 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on September 19, 2023.

(x)    On October 19, 2023, Integrated, Portal, and Ferguson purported to provide at least 109 individual physical therapy services to at least seven individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 27.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) two 45-minute initial examinations that were performed on one GEICO Insured at Integrated and one 30-minute follow-up examination that was performed on one <u>additional</u> GEICO Insured at Complete Medical; and (b) at least 9 <u>additional</u> physical therapy services purportedly provided to at least one <u>additional</u> GEICO Insured at Complete Medical, including at least 2.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 31.5 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on October 19, 2023.

(xi)    On December 5, 2023, Complete Medical, Carrillo, and Ferguson purported to provide at least 73 individual physical therapy services to at least eight individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 18.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) one 45-minute initial examination that was performed on one GEICO Insured at Complete

Medical; and (b) at least 74 <u>additional</u> physical therapy services purportedly provided to at least three <u>additional</u> GEICO Insureds at Integrated, including at least 18.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 37.5 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on December 5, 2023.

(xii)    On January 23, 2024, Professional Health, Linares, Ferguson, and Fraga purported to provide at least 90 individual physical therapy services to at least ten individual Insureds, and falsely contended in the resulting bills to GEICO that Fraga personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 22.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Fraga also purported to personally perform, or at least directly supervise: (a) two 45-minute initial examinations that were performed on two <u>additional</u> GEICO Insureds at River Medical Center; and (b) at least 46 <u>additional</u> physical therapy services purportedly provided to at least 2 <u>additional</u> GEICO Insureds at Nakelly Medical Center, Alzugarays Therapist Center, and Miami Specialty Treatment Center, including at least 11.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 35.5 hours of services that Fraga purported to personally perform, or at least directly supervise, at multiple different locations on January 23, 2024.

(xiii)   On January 26, 2024, Sanchez Health Care, Souto, Vazquez, and Ferguson purported to provide at least 14 individual physical therapy services to at least two individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 3.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) two 45-minute initial examinations that were performed on two <u>additional</u> GEICO Insureds at Complete Medical; and (b) at least 56 <u>additional</u> physical therapy services purportedly provided to at least five <u>additional</u> GEICO Insureds at Integrated and Complete Medical, including at least 14 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 19 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on January 26, 2024.

(xiv)    On February 22, 2024, Professional Health, Linares, Ferguson, and Fraga purported to provide at least 69 individual physical therapy services to at least seven individual Insureds, and falsely contended in the resulting bills to GEICO that Fraga

personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 17.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Fraga also purported to personally perform, or at least directly supervise: (a) one 45-minute initial examination and two 30-minute follow-up examinations that were performed on three <u>additional</u> GEICO Insureds at River Medical Center; and (b) at least 58 <u>additional</u> physical therapy services purportedly provided to at least eight <u>additional</u> GEICO Insureds at Canitas Medical Centers, Inc., Alzugarays Therapist Center, Lian Medical and Rehab Center Corp., Life Health Center Inc., Miami Specialty Treatment Center, and Sunshine Care Rehab Center, including at least 11.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 35.5 hours of services that Fraga purported to personally perform, or at least directly supervise, at multiple different locations on February 22, 2024.

(xv)     On February 23, 2024, Sanchez Health Care, Souto, Vazquez, and Ferguson purported to provide at least 34 individual physical therapy services to at least three individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 8.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) one 45-minute initial examination and one 30-minute follow-up examination that were performed on two <u>additional</u> GEICO Insureds at Complete Medical; and (b) at least 38 <u>additional</u> physical therapy services purportedly provided to at least four <u>additional</u> GEICO Insureds at Complete Medical, including at least 9.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 19.25 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on February 23, 2024.

(xvi)    On March 14, 2024, Sanchez Health Care, Souto, Vazquez, and Ferguson purported to provide at least 8 individual physical therapy services to at least one individual Insured, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least two hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) three 30-minute initial examinations that were performed on one <u>additional</u> GEICO Insured at Integrated; and (b) at least 66 <u>additional</u> physical therapy services purportedly provided to at least five <u>additional</u> GEICO Insureds at Complete Medical and

Integrated, including at least 16.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 20 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on March 14, 2024.

(xvii)   On June 13, 2024, Professional Health, Linares, Ferguson, and Fraga purported to provide at least 18 individual physical therapy services to at least one individual Insured, and falsely contended in the resulting bills to GEICO that Fraga personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 4.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Fraga also purported to personally perform, or at least directly supervise: (a) two 45-minute initial examinations and one 40-minute initial examination that were performed on three <u>additional</u> GEICO Insureds at River Medical Center; and (b) at least 77 <u>additional</u> physical therapy services purportedly provided to at least 10 <u>additional</u> GEICO Insureds at Canitas Medical Centers, Inc., Alzugarays Therapist Center, MO Medical Center Inc., Life Health Center Inc., and Miami Specialty Treatment Center, including at least 19.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 25.75 hours of services that Fraga purported to personally perform, or at least directly supervise, at multiple different locations on June 13, 2024.

(xviii)  On July 10, 2024, Sanchez Health Care, Souto, Vazquez, and Ferguson purported to provide at least 8 individual physical therapy services to at least one individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least two hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) five 30-minute initial examinations that were performed on four GEICO Insureds at Sanchez Healthcare; and (b) at least 84 <u>additional</u> physical therapy services purportedly provided to at least six <u>additional</u> GEICO Insureds at Integrated, including at least 21 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 25.5 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on July 10, 2024.

(xix)    On July 15, 2024, Sanchez Health Care, Souto, Vazquez, and Ferguson purported to provide at least 40 individual physical therapy services to at least three individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments.

What is more, those putative treatments included at least 10 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) five 20-minute follow-up examinations that were performed on two <u>additional</u> GEICO Insureds at Integrated; and (b) at least 85 <u>additional</u> physical therapy services purportedly provided to at least six <u>additional</u> GEICO Insureds at Integrated and Complete Medical, including at least 21.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 37 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on July 15, 2024.

(xx)   On August 5, 2024, Complete Medical, Carrillo, and Ferguson purported to provide at least 18 individual physical therapy services to at least two individual Insureds, and falsely contended in the resulting bills to GEICO that Ferguson personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 4.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Ferguson also purported to personally perform, or at least directly supervise: (a) three 30-minute follow-up examinations that were performed on three GEICO Insureds at Sanchez Health Care; and (b) at least 68 <u>additional</u> physical therapy services purportedly provided to at least six <u>additional</u> GEICO Insureds at Integrated, including at least 17 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insured throughout the services. In all, GEICO received billing for at least 23 hours of services that Ferguson purported to personally perform, or at least directly supervise, at multiple different locations on August 5, 2023.

94.    These are only representative examples. In the claims for physical therapy services that are identified in Exhibits "1" – "4", Defendants routinely falsely represented that Ferguson and Fraga had performed – or at least directly supervised – an impossible number of physical therapy services on individual dates, considering the amounts of services they simultaneously were purporting to perform or directly supervise at other health care clinics on those same dates.

95.    It is impossible that Ferguson and Fraga routinely performed or directly supervised such a high volume of services, typically at multiple locations, on individual dates.

96.     Furthermore, upon information and belief, the fraudulent billing for physical therapy services that Defendants submitted, respectively, through Integrated, Sanchez Health Care, Complete Medical, and Professional Health to GEICO constituted only a fraction of the total fraudulent billing for physical therapy services that the Defendants submitted through Integrated, Sanchez Health Care, Complete Medical, and Professional Health to all of the automobile insurers in the Florida automobile insurance market.

97.     GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

98.     It is extremely improbable, to the point of impossibility, that Defendants only submitted fraudulent billing to GEICO, and that the Defendants did not simultaneously bill other automobile insurers.

99.     Thus, upon information and belief, the improbable or impossible number of physical therapy services that Ferguson and Fraga purported to directly supervise or provide to GEICO's Insureds at Integrated, Sanchez Health Care, Complete Medical, and Professional Health on individual dates of services, including the dates of service identified above, constituted only a fraction of the total number of physical therapy services that Ferguson and Fraga purported to directly supervise or provide at Integrated, Sanchez Health Care, Complete Medical, and Professional Health, including to individuals insured by companies other than GEICO, on those same dates of service.

100.    In keeping with the fact that Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal falsely represented that Ferguson performed or directly supervised services at Integrated, Sanchez Health Care, Complete Medical, their clinic licensing applications – which were submitted under penalty of

perjury, stated that Ferguson did not perform healthcare services at Integrated, Sanchez Health Care, and Complete Medical.

101.   In the claims for "physical therapy" services identified in Exhibits "1" – "4", Defendants routinely fraudulently misrepresented that the physical therapy services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)   the purported physical therapy services were performed – to the extent that they were performed at all – by massage therapists and unsupervised/unlicensed individuals, in contravention of Florida law;

(ii)   Integrated, Sanchez Health Care, Complete Medical, and Professional Health could not lawfully recover PIP Benefits for the purported physical therapy services, because they were performed by massage therapists and unsupervised/unlicensed individuals; and

(iii)   Defendants systematically fraudulently misrepresented and concealed the identities of the individuals who either personally performed or directly supervised the putative physical therapy services.

102.   In this context, Ferguson – who at all relevant times purported to be the medical director at Integrated, Sanchez Health Care, Complete Medical, and Professional Health – did not, and could not have – legitimately performed his duties as medical director of the clinics.

103.   Had Ferguson actually performed his duties as medical director, he would have noted – among other things – that physical therapy services at Integrated, Sanchez Health Care, Complete Medical, and Professional Health were unlawfully performed by massage therapists and unsupervised/unlicensed individuals, and unlawfully billed to GEICO.

**C.   Defendants' Unlawful General Business Practice of Failing to Make a Good Faith Effort to Collect Co-Payments or Deductibles from Their Patients**

104.    During the relevant time period, Defendants unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

105.    In keeping with this fact, in virtually all of the thousands of bills (i.e., the HCFA-1500 forms) submitted through Integrated, Sanchez Health Care, Complete Medical, and Professional Health to GEICO for Defendants' Fraudulent Services, Defendants represented that they did not collect any money, whether it be a copayment or deductible, from the patient.

106.    In the claims identified in Exhibits "1" – "4", Defendants routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in the fact they were neither lawfully provided nor reimbursable because Defendants engaged in the unlawful general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

107.    In this context, Ferguson – who purported to be the medical director at Integrated, Sanchez Health Care, Complete Medical, and Professional Health – did not, and could not have, legitimately systematically reviewed the billing at Integrated, Sanchez Health Care, Complete Medical, and Professional Health's to ensure that it was neither fraudulent nor unlawful.

108.    Had Ferguson actually systematically reviewed the billing at Integrated, Sanchez Health Care, Complete Medical, and Professional Health, he would have noted – among other things – that Integrated, Sanchez Health Care, Complete Medical, and Professional Health unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

**D.      Defendants' Fraudulent Treatment and Billing Protocols**

109.    In the claims identified in Exhibits "1" – "4", almost none of the Insureds whom Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

110.    Even so, in the claims identified in Exhibits "1" – "4", Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" that was provided pursuant to a pre-determined, fraudulent protocol designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to the "treatment".

111.    Defendants purported to provide their pre-determined fraudulent treatment protocol to Insureds in the claims identified in Exhibits "1" – "4" without regard for the Insureds' individual symptoms or presentation, or – in most cases – the total absence of any actual continuing medical problems arising from any actual automobile accidents.

112.    Each step in Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit Defendants to generate and falsely justify the maximum amount of fraudulent PIP Billing for each Insured.

113.    No legitimate physician, physical therapist, nurse, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

114.    Defendants permitted the fraudulent treatment and billing protocol designed below to proceed under their auspices because they sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

30

1.      **The Fraudulent Charges for Initial Examinations at Integrated, Sanchez Health Care, and Complete Medical**

115.    As an initial step in Defendants' fraudulent treatment and billing protocol, Integrated, Sanchez Health, and Complete Medical purported to provide virtually every Insured in the claims identified in Exhibits "1" – "3" with an initial examination.

116.    Ferguson purported to personally perform virtually all of the initial examinations in the claims identified in Exhibits "1" and "3".

117.    Ferguson and R. Rodriguez purported to personally perform virtually all of the initial examinations identified in Exhibit "2".

118.    As set forth in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal then billed the initial examinations to GEICO, or caused them to billed to GEICO, under CPT code 99204, resulting in charges of $360.00 to $400.00 for each initial examination that they purported to provide.

119.    In the claims for initial examinations identified in Exhibits "1" – "3", the charges for the initial examinations were fraudulent in that they misrepresented Integrated, Sanchez Health Care, and Complete Medical's eligibility to collect PIP Benefits in the first instance.

120.    In fact, and as set forth herein, Integrated, Sanchez Health Care, and Complete Medical never were eligible to collect PIP Benefits, inasmuch as they were operated in violation of the licensing and operating requirements set forth the Clinic Act, the False and Fraudulent Insurance Claims Statute, and the Physical Therapy Act.

121.    As set forth below, the charges for the initial examinations identified in Exhibits "1" – "3" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

31

a.      **Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

122.    In the claims for initial examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely misrepresented the severity of the Insureds' presenting problems.

123.    Pursuant to the American Medical Association's CPT Assistant, which governs reimbursement of PIP claims, the use of CPT code 99204 to bill for an initial patient examination represents that the Insured presented with problems of moderate to high severity.

124.    However, to the extent that the Insureds in the claims identified in Exhibits "1" – "3" had any presenting problems at all as a result of their typically-minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

125.    For instance, in most of the claims identified in Exhibits "1" – "3", the Insureds did not seek treatment at any hospital as a result of their accident, and to the limited extent that the Insureds in the claims identified in Exhibits "1" – "3" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and then discharged with nothing more serious than a minor soft tissue diagnosis.

126.    Furthermore, in most of the claims identified in Exhibits "1" – "3", contemporaneous police reports indicated that the Insureds' vehicles were functional following the accidents, and that no one was seriously injured in their accidents, or injured at all.

127.    Even so, in the claims for initial examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal billed for examinations using CPT code 99204, and thereby falsely represented that the Insureds presented with problems of moderate severity.

128.    For example:

(i)     On October 15, 2021, an Insured named EP was involved in an automobile
        accident. The contemporaneous police report indicated that the accident was a low-
        speed, low-impact collision, and that EP's vehicle was drivable following the
        accident. The police report further indicated that EP was not injured and did not
        complain of any pain at the scene. In keeping with the fact that EP was not seriously
        injured, EP did not visit any hospital emergency room following the accident. To the
        extent that EP experienced any health problems at all as a result of the accident,
        they were of low or minimal severity. Even so, following a purported initial
        examination of EP on October 18, 2021, Integrated, J. Rodriguez, and Ferguson
        billed GEICO for the initial examination using CPT code 99204, and thereby falsely
        represented that the initial examination involved presenting problems of moderate
        to high severity.

(ii)    On May 5, 2022, an Insured named RR was involved in an automobile accident.
        The contemporaneous police report indicated that the accident was a low-speed,
        low-impact collision, and that RR's vehicle was drivable following the accident.
        The police report further indicated that RR was not injured and did not complain of
        any pain at the scene. In keeping with the fact that RR was not seriously injured,
        RR did not visit any hospital emergency room following the accident. To the extent
        that RR experienced any health problems at all as a result of the accident, they were
        of low or minimal severity. Even so, following a purported initial examination of
        RR on May 25, 2022, Sanchez Health Care, Silvera, and Ferguson billed GEICO
        for the initial examination using CPT code 99204, and thereby falsely represented
        that the initial examination involved presenting problems of moderate to high
        severity.

(iii)   On May 9, 2022, an Insured named YP was involved in an automobile accident.
        The contemporaneous police report indicated that the accident was a low-speed,
        low-impact collision, and that YP's vehicle was drivable following the accident.
        The police report further indicated that YP was not injured and did not complain of
        any pain at the scene. In keeping with the fact that YP was not seriously injured,
        YP did not visit any hospital emergency room following the accident. To the extent
        that YP experienced any health problems at all as a result of the accident, they were
        of low or minimal severity. Even so, following a purported initial examination of
        YP on May 10, 2022, Integrated, J. Rodriguez, and Ferguson billed GEICO for the
        initial examination using CPT code 99204, and thereby falsely represented that the
        initial examination involved presenting problems of moderate to high severity.

(iv)    On May 31, 2022, an Insured named RG was involved in an automobile accident.
        The contemporaneous police report indicated that the accident was a low-speed,
        low-impact collision, and that RG's vehicle was drivable following the accident.
        The police report further indicated that RG was not injured and did not complain
        of any pain at the scene. In keeping with the fact that RG was not seriously injured,
        RG did not visit any hospital emergency room following the accident. To the extent

that RG experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of RG on June 1, 2022, Integrated, J. Rodriguez, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(v)     On June 14, 2022, an Insured named CD was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that CD's vehicle was drivable following the accident. The police report further indicated that CD was not injured and did not complain of any pain at the scene. In keeping with the fact that CD was not seriously injured, CD did not visit any hospital emergency room following the accident. To the extent that CD experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of CD on June 15, 2022, Integrated, J. Rodriguez, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(vi)     On July 18, 2022, an Insured named AM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AM's vehicle was drivable following the accident. The police report further indicated that AM was not injured and did not complain of any pain at the scene. In keeping with the fact that AM was not seriously injured, AM did not visit any hospital emergency room following the accident. To the extent that AM experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AM on July 19, 2022, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(vii)     On September 18, 2022, an Insured named DT was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DT's vehicle was drivable following the accident. The police report further indicated that DT was not injured and did not complain of any pain at the scene. In keeping with the fact that DT was not seriously injured, DT did not visit any hospital emergency room following the accident. To the extent that DT experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of DT on September 20, 2022, Complete Medical, Portal, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(viii)    On September 21, 2022, an Insured named MD was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-

speed, low-impact collision, and that MD's vehicle was drivable following the accident. The police report further indicated that MD was not injured and did not complain of any pain at the scene. In keeping with the fact that MD was not seriously injured, MD did not visit any hospital emergency room following the accident. To the extent that MD experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of MD on September 26, 2022, Integrated, J. Rodriguez, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(ix)     On November 20, 2022, an Insured named AL was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AL's vehicle was drivable following the accident. The police report further indicated that AL was not injured and did not complain of any pain at the scene. In keeping with the fact that AL was not seriously injured, AL did not visit any hospital emergency room following the accident. To the extent that AL experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AL on November 22, 2022, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(x)     On December 13, 2022, an Insured named DV was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DV's vehicle was drivable following the accident. The police report further indicated that DV was not injured and did not complain of any pain at the scene. In keeping with the fact that DV was not seriously injured, DV did not visit any hospital emergency room following the accident. To the extent that DV experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of DV on December 14, 2022, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xi)     On December 19, 2022, an Insured named LC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LC's vehicle was drivable following the accident. The police report further indicated that LC was not injured and did not complain of any pain at the scene. In keeping with the fact that LC was not seriously injured, LC did not visit any hospital emergency room following the accident. To the extent that LC experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of LC on December 20, 2022, Sanchez Health Care, Silvera, and

Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xii)    On January 11, 2023, an Insured named EP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EP's vehicle was drivable following the accident. The police report further indicated that EP was not injured and did not complain of any pain at the scene. In keeping with the fact that EP was not seriously injured, EP did not visit any hospital emergency room following the accident. To the extent that EP experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of EP on January 12, 2023, Sanchez Health Care, Souto, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xiii)   On February 3, 2023, an Insured named EP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EP's vehicle was drivable following the accident. The police report further indicated that EP was not injured and did not complain of any pain at the scene. In keeping with the fact that EP was not seriously injured, EP did not visit any hospital emergency room following the accident. To the extent that EP experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of EP on February 6, 2023, Integrated, Carrillo, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xiv)    On June 14, 2023, an Insured named AV was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AV's vehicle was drivable following the accident. The police report further indicated that AV was not injured and did not complain of any pain at the scene. In keeping with the fact that AV was not seriously injured, AV did not visit any hospital emergency room following the accident. To the extent that AV experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AV on June 15, 2023, Integrated, Carrillo, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xv)     On August 17, 2023, an Insured named AC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AC's vehicle was drivable following the accident. The police report further indicated that AC was not injured and did not complain of any pain at the scene. In keeping with the fact that AC was not seriously injured, AC did not visit any hospital emergency room following the accident. To the extent

that AC experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AC on August 18, 2023, Complete Medical, Portal, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xvi)   On November 14, 2023, an Insured named JA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JA's vehicle was drivable following the accident. The police report further indicated that JA was not injured and did not complain of any pain at the scene. In keeping with the fact that JA was not seriously injured, JA did not visit any hospital emergency room following the accident. To the extent that JA experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of JA on November 21, 2023, Complete Medical, Portal, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xvii)   On December 10, 2023, an Insured named YA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that YA's vehicle was drivable following the accident. The police report further indicated that YA was not injured and did not complain of any pain at the scene. In keeping with the fact that YA was not seriously injured, YA did not visit any hospital emergency room following the accident. To the extent that YA experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of YA on January 12, 2023, Complete Medical, Portal, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xviii)   On January 25, 2024, an Insured named AP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AP's vehicle was drivable following the accident. The police report further indicated that AP was not injured and did not complain of any pain at the scene. In keeping with the fact that AP was not seriously injured, AP did not visit any hospital emergency room following the accident. To the extent that AP experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AP on January 26, 2024, Complete Medical, Portal, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xix)    On April 4, 2024, an Insured named RS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RS's vehicle was drivable following the accident. The police report further indicated that RS was not injured and did not complain of any pain at the scene. In keeping with the fact that RS was not seriously injured, RS did not visit any hospital emergency room following the accident. To the extent that RS experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of RS on April 6, 2024, Complete Medical, Portal, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(xx)     On June 15, 2024, an Insured named JO was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JO's vehicle was drivable following the accident. The police report further indicated that JO was not injured and did not complain of any pain at the scene. In keeping with the fact that JO was not seriously injured, JO did not visit any hospital emergency room following the accident. To the extent that JO experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of JO on June 17, 2024, Integrated, Carrillo, and Ferguson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

129.     These are only representative examples. In the majority of the claims for initial examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal falsely represented that the Insureds presented with problems of moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT code 99204, because examinations billable under CPT code 99204 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that Defendants purported to provide the Insureds.

**b.**     **Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

130.     What is more, in the claims identified in Exhibits "1" – "3" for initial examinations under CPT code 99204, the charges for the initial examinations under CPT code 99204

misrepresented and exaggerated the amount of time that the examining practitioners spent performing the examinations.

131.     Pursuant to the CPT Assistant, the use of CPT code 99204 to bill for an initial patient examination represents that the physician or other health care practitioner who performed the underlying examination spent at least 45 minutes performing the examination.

132.     As set forth in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal typically billed for their putative initial examinations using CPT code 99204, and thereby represented that the physicians or other health care practitioners who purported to conduct the examinations spent at least 45 minutes performing the examinations.

133.     In fact, in the initial examinations identified in Exhibits "1" – "3", the practitioners who purported to perform the initial examinations on behalf of Integrated, Sanchez Health Care, and Complete Medical never spent more than 15-20 minutes of time when performing the examinations, much less 45 minutes.

134.     In keeping with the fact that the initial examinations in the claims identified in Exhibits "1" – "3" did not take more than 15-20 minutes to perform, Ferguson and R. Rodriguez used template forms in purporting to conduct the examinations.

135.     All that was required to complete the template forms was a brief patient interview and a perfunctory physical examination physical examination of the Insureds, using a limited range of examination parameters.

136.     These interviews and examinations did not require Ferguson, R. Rodriguez, or any other practitioner associated with Integrated, Sanchez Health Care, and Complete Medical to spend more than 15-20 minutes of time on the examinations.

137. In the claims for initial examinations that are identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal misrepresented the amount of time that was spent in conducting the initial examinations because lengthier examinations that are billable under CPT codes 99204 are reimbursable at higher rates than examinations that take less time to perform.

**c.      Misrepresentations Regarding the Extent of Medical Decision-Making**

138. Furthermore, and pursuant to the CPT Assistant, when Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal billed GEICO for putative initial examinations under CPT code 99204 in the claims for initial examinations identified in Exhibits "1" – "3", they falsely represented that the practitioners who purported to perform the examinations on behalf of Integrated, Sanchez Health Care, and Complete Medical engaged in some legitimate, moderate complexity medical decision-making in connection with the examinations.

139. In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

140. Rather, in the claims for initial examinations identified in Exhibits "1" – "3": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic, tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) the practitioners who purported to perform the examinations did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and instead provided a substantially similar, pre-determined sprain/strain or similar soft tissue

injury "diagnoses" for every Insured, regardless of their true individual circumstances or presentation.

141.    For example:

(i)    On May 5, 2022, an Insured named RR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RR's vehicle was drivable following the accident. The police report further indicated that RR was not injured and did not complain of any pain at the scene. In keeping with the fact that RR was not seriously injured, RR did not visit any hospital emergency room following the accident. To the extent that RR experienced any health problems at all as a result of the accident, they were of low or minimal severity. On May 6, 2022, R. Rodriguez purported to conduct an initial examination of RR at Sanchez Health Care. To the extent that R. Rodriguez performed the examination in the first instance, R. Rodriguez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, R. Rodriguez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, R. Rodriguez provided RR with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither RR's presenting problems, nor the treatment plan provided to RR by R. Rodriguez, Ferguson, Silvera, and Sanchez Health Care presented any risk of significant complications, morbidity, or mortality. To the contrary, RR did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Silvera, and Sanchez Health Care consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to RR. Even so, Ferguson, Silvera, and Sanchez Health Care billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that R. Rodriguez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(ii)    On May 9, 2022, an Insured named YP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that YP's vehicle was drivable following the accident. The police report further indicated that YP was not injured and did not complain of any pain at the scene. In keeping with the fact that YP was not seriously injured, YP did not visit any hospital emergency room following the accident. To the extent that YP experienced any health problems at all as a result of the accident, they were of low or minimal severity. On November 10, 2022, Ferguson purported to conduct an initial examination of YP at Integrated. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided YP with the same, false list of soft tissue

injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither YP's presenting problems, nor the treatment plan provided to YP by Ferguson, J. Rodriguez, and Integrated presented any risk of significant complications, morbidity, or mortality. To the contrary, YP did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, J. Rodriguez, and Integrated consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to YP. Even so, Ferguson, J. Rodriguez, and Integrated billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(iii)   On July 12, 2022, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JC's vehicle was drivable following the accident. The police report further indicated that JC was not injured and did not complain of any pain at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as a result of the accident, they were of low or minimal severity. On July 13, 2022, Ferguson purported to conduct an initial examination of JC at Complete Medical. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided JC with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither JC's presenting problems, nor the treatment plan provided to JC by Ferguson, Portal, and Complete Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, JC did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Portal, and Complete Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JC. Even so, Ferguson, Portal, and Complete Medical billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(iv)   On September 18, 2022, an Insured named DT was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DT's vehicle was drivable following the accident. The police report further indicated that DT was not injured and did not complain of any pain at the scene. In keeping with the fact that DT was not seriously injured, DT did not visit any hospital emergency room following the accident. To the extent that DT experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 20, 2022, Ferguson purported

to conduct an initial examination of DT at Complete Medical. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided DT with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither DT's presenting problems, nor the treatment plan provided to DT by Ferguson, Portal, and Complete Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, DT did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Portal, and Complete Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to DT. Even so, Ferguson, Portal, and Complete Medical billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(v)     On September 21, 2022, an Insured named EA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EA's vehicle was drivable following the accident. The police report further indicated that EA was not injured and did not complain of any pain at the scene. In keeping with the fact that EA was not seriously injured, EA did not visit any hospital emergency room following the accident. To the extent that EA experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 26, 2022, Ferguson purported to conduct an initial examination of EA at Integrated. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided EA with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither EA's presenting problems, nor the treatment plan provided to EA by Ferguson, J. Rodriguez, and Integrated presented any risk of significant complications, morbidity, or mortality. To the contrary, EA did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, J. Rodriguez, and Integrated consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to EA. Even so, Ferguson, J. Rodriguez, and Integrated billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(vi)    On October 15, 2022, an Insured named OS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-

speed, low-impact collision, and that OS's vehicle was drivable following the accident. The police report further indicated that OS was not injured and did not complain of any pain at the scene. In keeping with the fact that OS was not seriously injured, OS did not visit any hospital emergency room following the accident. To the extent that OS experienced any health problems at all as a result of the accident, they were of low or minimal severity. On October 17, 2022, R. Rodriguez purported to conduct an initial examination of OS at Sanchez Health Care. To the extent that R. Rodriguez performed the examination in the first instance, R. Rodriguez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, R. Rodriguez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, R. Rodriguez provided OS with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither OS's presenting problems, nor the treatment plan provided to OS by R. Rodriguez, Ferguson, Silvera, and Sanchez Health Care presented any risk of significant complications, morbidity, or mortality. To the contrary, OS did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Silvera, and Sanchez Health Care consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to OS. Even so, Ferguson, Silvera, and Sanchez Health Care billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that R. Rodriguez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(vii) On November 20, 2022, an Insured named AL was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AL's vehicle was drivable following the accident. The police report further indicated that AL was not injured and did not complain of any pain at the scene. In keeping with the fact that AL was not seriously injured, AL did not visit any hospital emergency room following the accident. To the extent that AL experienced any health problems at all as a result of the accident, they were of low or minimal severity. On November 22, 2022, R. Rodriguez purported to conduct an initial examination of AL at Sanchez Health Care. To the extent that R. Rodriguez performed the examination in the first instance, R. Rodriguez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, R. Rodriguez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, R. Rodriguez provided AL with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither AL's presenting problems, nor the treatment plan provided to AL by R. Rodriguez, Ferguson, Silvera, and Sanchez Health Care presented any risk of significant complications, morbidity, or mortality. To the contrary, AL did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Silvera, and Sanchez Health Care consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AL. Even so, Ferguson, Silvera,

and Sanchez Health Care billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that R. Rodriguez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(viii)   On December 13, 2022, an Insured named DV was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DV's vehicle was drivable following the accident. The police report further indicated that DV was not injured and did not complain of any pain at the scene. In keeping with the fact that DV was not seriously injured, DV did not visit any hospital emergency room following the accident. To the extent that DV experienced any health problems at all as a result of the accident, they were of low or minimal severity. On December 14, 2022, R. Rodriguez purported to conduct an initial examination of DV at Sanchez Health Care. To the extent that R. Rodriguez performed the examination in the first instance, R. Rodriguez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, R. Rodriguez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, R. Rodriguez provided DV with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither DV's presenting problems, nor the treatment plan provided to DV by Ferguson, Silvera, and Sanchez Health Care presented any risk of significant complications, morbidity, or mortality. To the contrary, DV did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Silvera, and Sanchez Health Care consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to DV. Even so, Ferguson, Silvera, and Sanchez Health Care billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that R. Rodriguez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(ix)   On January 10, 2023, an Insured named IF was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that IF's vehicle was drivable following the accident. The police report further indicated that IF was not injured and did not complain of any pain at the scene. In keeping with the fact that IF was not seriously injured, IF did not visit any hospital emergency room following the accident. To the extent that IF experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 12, 2023, Ferguson purported to conduct an initial examination of IF at Complete Medical. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, IF did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided IF with the same, false list of soft tissue injury

"diagnoses" that he provided to virtually every other Insured. Furthermore, neither IF's presenting problems, nor the treatment plan provided to IF by Ferguson, Portal, and Complete Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, IF did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Portal, and Complete Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to IF. Even so, Ferguson, Portal, and Complete Medical billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(x)   On January 11, 2023, an Insured named EP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EP's vehicle was drivable following the accident. The police report further indicated that EP was not injured and did not complain of any pain at the scene. In keeping with the fact that EP was not seriously injured, EP did not visit any hospital emergency room following the accident. To the extent that EP experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 12, 2023, R. Rodriguez purported to conduct an initial examination of EP at Sanchez Health Care. To the extent that R. Rodriguez performed the examination in the first instance, R. Rodriguez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, R. Rodriguez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, R. Rodriguez provided EP with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither EP's presenting problems, nor the treatment plan provided to EP by R. Rodriguez, Ferguson, Souto, and Sanchez Health Care presented any risk of significant complications, morbidity, or mortality. To the contrary, EP did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Souto, and Sanchez Health Care consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to EP. Even so, Ferguson, Souto, and Sanchez Health Care billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that R. Rodriguez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xi)   On March 13, 2023, an Insured named OC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that OC's vehicle was drivable following the accident. The police report further indicated that OC was not injured and did not complain of any pain at the scene. In keeping with the fact that OC was not seriously injured, OC did not visit any hospital emergency room following the accident. To the extent that OC experienced any health problems at all as a result of the accident, they were of low or minimal severity. On March 17, 2023, Ferguson purported to conduct an initial examination of OC at Integrated. To the extent that Ferguson performed the

examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided OC with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither OC's presenting problems, nor the treatment plan provided to OC by Ferguson, Carrillo, and Integrated presented any risk of significant complications, morbidity, or mortality. To the contrary, OC did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Carrillo, and Integrated consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to OC. Even so, Ferguson, Carrillo, and Integrated billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xii)    On June 14, 2023, an Insured named AV was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AV's vehicle was drivable following the accident. The police report further indicated that AV was not injured and did not complain of any pain at the scene. In keeping with the fact that AV was not seriously injured, AV did not visit any hospital emergency room following the accident. To the extent that AV experienced any health problems at all as a result of the accident, they were of low or minimal severity. On June 15, 2023, Ferguson purported to conduct an initial examination of AV at Integrated. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided AV with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither AV's presenting problems, nor the treatment plan provided to AV by Ferguson, Carrillo, and Integrated presented any risk of significant complications, morbidity, or mortality. To the contrary, AV did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Carrillo, and Integrated billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xiii)   On August 20, 2023, an Insured named CM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that CM's vehicle was drivable following the accident. The police report further indicated that CM was not injured and did not complain of any pain at the scene. In keeping with the fact that CM was not seriously injured, CM did not visit any hospital emergency room following the accident. To the extent that CM experienced any health problems at all as a result

of the accident, they were of low or minimal severity. On August 21, 2023, Ferguson purported to conduct an initial examination of CM at Integrated. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided CM with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither CM's presenting problems, nor the treatment plan provided to CM by Ferguson, Carrillo, and Integrated presented any risk of significant complications, morbidity, or mortality. To the contrary, CM did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Carrillo, and Integrated billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xiv)   On January 25, 2024, an Insured named JR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JR's vehicle was drivable following the accident. The police report further indicated that JR was not injured and did not complain of any pain at the scene. In keeping with the fact that JR was not seriously injured, JR did not visit any hospital emergency room following the accident. To the extent that JR experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 26, 2024, Ferguson purported to conduct an initial examination of JR at Complete Medical. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided JR with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither JR's presenting problems, nor the treatment plan provided to JR by Ferguson, Portal, and Complete Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, JR did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Portal, and Complete Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JR. Even so, Ferguson, Portal, and Complete Medical billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xv)   On June 5, 2024, an Insured named OM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that OM's vehicle was drivable following the accident.

48

The police report further indicated that OM was not injured and did not complain of any pain at the scene. In keeping with the fact that OM was not seriously injured, OM did not visit any hospital emergency room following the accident. To the extent that OM experienced any health problems at all as a result of the accident, they were of low or minimal severity. On June 6, 2024, Ferguson purported to conduct an initial examination of OM at Complete Medical. To the extent that Ferguson performed the examination in the first instance, Ferguson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination.  Moreover, Ferguson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Ferguson provided OM with the same, false list of soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither OM's presenting problems, nor the treatment plan provided to OM by Ferguson, Portal, and Complete Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, OM did not need any significant treatment at all as a result of the accident, and the treatment provided by Ferguson, Portal, and Complete Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to OM. Even so, Ferguson, Portal, and Complete Medical billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Ferguson engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

142.    These are only representative examples. In the claims identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely falsely represented that the purported examinations involved legitimate moderate-complexity decision-making, when in fact they did not involve any legitimate medical decision-making.

143.    In a legitimate clinical setting, when a patient presents with a soft tissue injury such as a sprain or strain arising from an automobile accident, the initial standard of care is conservative treatment comprise of rest, ice, compression, and – if applicable – elevation of the affected body part.

144.    It is generally inappropriate to begin administering physical therapy to a patient with a soft tissue injury in the immediate aftermath of the injury, before the patient has first tried

a more conservative course of rest, ice, compression, and – if applicable – elevation of the affected body part.

145.     Even so, in the claims identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely directed Insureds to immediately begin a course of medically unnecessary physical therapy often within days of their accidents, before the Insureds had first tried a more conservative course of treatment.

146.     Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely caused Insureds to immediately begin a course of physical therapy often within days of their accidents, or even on the same day of their accidents, because their putative initial examinations involved no legitimate medical decision-making whatsoever, and had pre-determined outcomes.

147.     There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

148.     An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured and in a given automobile accident.

149.     As set forth herein, in the claims identified in Exhibits "1" – "3", virtually all of the Insureds that Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal purported to treat were involved in relatively minor accidents.

150.    It is improbable that any two or more Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibits "1" – "3" would suffer substantially similar injuries as a result of their accidents, or require a substantially similar course of treatment.

151.    It is even more improbable – to the point of impossibility – that this kind of pattern would recur with great frequency within the cohort of patients treating at individual healthcare clinics such as Integrated, Sanchez Health Care, and Complete Medical, with numerous instances in which two or more patients who had been involved in the same accident supposedly presented with substantially similar symptoms warranting substantially similar diagnoses and treatment.

152.    Even so, in keeping with the fact that Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal's putative "diagnoses" were pre-determined and false, Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal frequently purported to provide examinations, on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and at the conclusion of the examinations, caused the Insureds to be issued substantially identical, false "diagnoses", and recommended substantially identical courses of medically unnecessary "treatment" for the Insureds, despite the fact that they were differently situated.

153.    For example:

(i)     On January 6, 2022, three Insureds – AP, LP, and ML – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Integrated for initial examinations by Ferguson on the exact same date, January 7, 2022. At the conclusion of the purported initial examinations, Integrated, J. Rodriguez, and Ferguson provided AP, LP, and ML with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(ii)    On February 19, 2022, two Insureds – DF and MV – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Sanchez

Health Care for initial examinations by R. Rodriguez <u>on the exact same date</u>, February 22, 2022. At the conclusion of the purported initial examinations, Sanchez Health Care, Silvera, Ferguson, and R. Rodriguez provided DF and MV with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iii)   On February 24, 2022, two Insureds – YT and EG – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Complete Medical for initial examinations by Ferguson <u>on the exact same date</u>, February 25, 2022. At the conclusion of the purported initial examinations, Complete Medical, Garcia, and Ferguson provided YT and EG with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iv)   On May 9, 2022, two Insureds – ES and YP– were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Integrated for initial examinations by Ferguson <u>on the exact same date</u>, May 10, 2022. At the conclusion of the purported initial examinations, Integrated, J. Rodriguez, and Ferguson provided ES and YP with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(v)   On September 1, 2022, two Insureds – DV and RC – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Complete Medical for initial examinations by Ferguson <u>on the exact same date</u>, September 2, 2022. At the conclusion of the purported initial examinations, Complete Medical, Portal, and Ferguson provided DV and RC with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vi)   On November 7, 2022, two Insureds – TN and AE – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Sanchez Health Care for initial examinations by R. Rodriguez <u>on the exact same date</u>, November 10, 2022. At the conclusion of the purported initial examinations, Sanchez Health Care, Silvera, Ferguson, and R. Rodriguez provided TN and AE with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vii)   On December 24, 2022, two Insureds – OA and ML – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Sanchez Health Care for initial examinations by R. Rodriguez <u>on the exact same date</u>, January 3, 2023. At the conclusion of the purported initial examinations, Sanchez Health Care, Silvera, Ferguson, and R. Rodriguez provided OA and ML with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medical unnecessary treatment to both of them.

(viii)   On January 10, 2023, two Insureds – YA and IF – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Complete Medical for initial examinations by Ferguson on the exact same date, January 12, 2023. At the conclusion of the purported initial examinations, Complete Medical, Portal, and Ferguson provided YA and IF with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(ix)   On January 14, 2023, two Insureds – JT and RS – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Sanchez Health Care for initial examinations by R. Rodriguez on the exact same date, January 17, 2023. At the conclusion of the purported initial examinations, Sanchez Health Care, Souto, Ferguson, and R. Rodriguez provided JT and RS with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(x)   On March 26, 2023, two Insureds – LJ and YB – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Integrated for initial examinations by Ferguson on the exact same date, April 3, 2023. At the conclusion of the purported initial examinations, Integrated, Carrillo, and Ferguson provided LJ and YB with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xi)   On August 17, 2023, two Insureds – OG and AC – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Complete Medical for initial examinations by Ferguson on the exact same date, August 18, 2023. At the conclusion of the purported initial examinations, Complete Medical, Portal, and Ferguson provided OG and AC with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xii)   On January 25, 2024, two Insureds – AP and JR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Complete Medical for initial examinations by Ferguson on the exact same date, January 26, 2024. At the conclusion of the purported initial examinations, Complete Medical, Portal, and Ferguson provided AP and JR with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xiii)   On January 28, 2024, two Insureds – GM and AH – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Sanchez Health Care for initial examinations by Ferguson on the exact same date, January 29, 2024. At the conclusion of the purported initial examinations, Sanchez Health Care, Vazquez, and Ferguson provided GM and AH with substantially similar, false

soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xiv)   On June 5, 2024, two Insureds – JS and OM – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Complete Medical for initial examinations by Ferguson <u>on the exact same date</u>, June 6, 2024. At the conclusion of the purported initial examinations, Complete, Portal, and Ferguson provided JS and OM with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xv)   On June 30, 2024, two Insureds – YS and ME – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Integrated for initial examinations by Ferguson <u>on the exact same date</u>, July 1, 2024. At the conclusion of the purported initial examinations, Integrated, Carrillo, and Ferguson provided YS and ME with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

154.   These are only representative examples. In the claims for initial examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely falsely represented that the initial examinations involved medical decision-making of moderate complexity in order to provide a false basis to bill for the initial examinations under CPT code 99204, because CPT code 99204 is reimbursable at higher rates than examinations that do not require any complex medical decision-making at all.

155.   In actuality, the initial examinations did not involve any legitimate medical decision-making at all, because the purported "results" of the examinations were pre-determined, falsified, and designed to provide a false justification for the laundry-list of other Fraudulent Services that Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal purported to provide.

156.   In the claims for initial examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical,

Garcia, and Portal routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable because:

    (i)    the putative examinations were illusory, with outcomes that were pre-determined to result in substantially identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

    (ii)    the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

    (iii)    Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in violation of Florida law.

**2.    The Fraudulent Charges for Follow-Up Examinations at Integrated, Sanchez Health Care and Complete Medical**

157.    In addition to their fraudulent initial examinations, Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal virtually always purported to subject each of the Insureds in the claims identified in Exhibits "1" – "3" to multiple, fraudulent follow-up examinations during the course of their fraudulent treatment and billing protocol.

158.    Ferguson purported to personally perform virtually all of the follow-up examinations in the claims identified in Exhibits "1" and "3", while R. Rodriguez and Ferguson purported to perform virtually all of the follow-up examinations in the claims identified in Exhibit "2".

159.    As set forth in Exhibit "1", Integrated, J. Rodriguez, Carrillo, and Ferguson billed many of the purported follow-up examinations under: (i) CPT code 99214, virtually always

resulting in a charge of $300.00 for each putative follow-up examination; and (ii) CPT code 99213, virtually always resulting in a charge of $200.00 for each putative follow-up examination.

160.    As set forth in Exhibit "2", Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson billed virtually all of the purported follow-up examinations under CPT code 99214, virtually always resulting in a charge of $250.00 for each putative follow-up examination.

161.    As set forth in Exhibit "3", Complete Medical, Garcia, Portal, and Ferguson billed virtually all of the purported follow-up examinations under CPT code 99214, virtually always resulting in a charge of $330.00 for each putative follow-up examination.

162.    In the claims for follow-up examinations identified in Exhibits "1" – "3", the charges for the follow-up examinations were fraudulent in that they misrepresented Integrated, Sanchez Health Care, and Complete Medical's eligibility to collect PIP Benefits in the first instance.

163.    In fact, and as set forth herein, Integrated, Sanchez Health Care, and Complete Medical were never eligible to collect PIP Benefits, inasmuch as they were operated in violation of Florida law.

164.    As set forth below, Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal's charges for the follow-up examinations identified in Exhibits "1" – "3" also were fraudulent in that they misrepresented the nature, extent, and results of the follow-up examinations.

**1.    Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

165.    Pursuant to the CPT Assistant, the use of CPT code 99213 to bill for a follow-up examination typically requires that the patient presented with problems of low to moderate severity.

166. Moreover, pursuant to the CPT Assistant, the use of CPT code 99214 to bill for a follow-up examination typically represents that the patient presented with problems of moderate to high severity.

167. However, to the extent that the Insureds in the claims identified in Exhibits "1" – "3" suffered any injuries at all in their minor automobile accidents, the injuries were minor soft tissue injuries such as sprains and strains, which were of low or minimal severity, even at their onset.

168. Minor soft tissue injuries such as strains and sprains virtually always resolve after a short course of conservative treatment or no treatment at all. By the time the Insureds in the claims identified in Exhibits "1" – "3" presented for their putative follow-up examinations – typically weeks or months after their minor accidents – the Insureds either did not have any genuine presenting problems at all as a result of their minor automobile accidents, or else their presenting problems were minimal.

169. Even so, in the claims for follow-up examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal represented that the Insureds presented with problems of low to moderate, or moderate to high severity, when in fact the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all at the time of the purported examinations.

170. For example:

(i)     On October 15, 2021, an Insured named EP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EP's vehicle was drivable following the accident. The police report further indicated that EP was not injured and did not complain of any pain at the scene. In keeping with the fact that EP was not seriously injured, EP did not visit any hospital emergency room following the accident. To

the extent that EP experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of EP on December 22, 2021, Integrated, J. Rodriguez, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that EP presented with problems of moderate severity during the examination.

(ii)     On May 5, 2022, an Insured named RR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RR's vehicle was drivable following the accident. The police report further indicated that RR was not injured and did not complain of any pain at the scene. In keeping with the fact that RR was not seriously injured, RR did not visit any hospital emergency room following the accident. To the extent that RR experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of RR on May 24, 2022, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that RR presented with problems of moderate severity during the examination.

(iii)    On June 14, 2022, an Insured named CD was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that CD's vehicle was drivable following the accident. The police report further indicated that CD was not injured and did not complain of any pain at the scene. In keeping with the fact that CD was not seriously injured, CD did not visit any hospital emergency room following the accident. To the extent that CD experienced any health problems at all as a result of the accident, they were of low or minimal severity at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of CD on July 14, 2022, Integrated, J. Rodriguez, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that CD presented with problems of moderate severity during the examination.

(iv)    On July 12, 2022, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JC's vehicle was drivable following the accident. The police report further indicated that JC was not injured and did not complain of any pain at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of JC on August 11, 2022, Complete Medical, Portal, and Ferguson

billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that JC presented with problems of moderate severity during the examination.

(v)     On August 25, 2022, an Insured named YV was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that YV's vehicle was drivable following the accident. The police report further indicated that YV was not injured and did not complain of any pain at the scene. In keeping with the fact that YV was not seriously injured, YV did not visit any hospital emergency room following the accident. To the extent that YV experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of YV on September 23, 2022, Integrated, J. Rodriguez, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that YV presented with problems of moderate severity during the examination.

(vi)    On September 21, 2022, an Insured named MD was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that MD's vehicle was drivable following the accident. The police report further indicated that MD was not injured and did not complain of any pain at the scene. In keeping with the fact that MD was not seriously injured, MD did not visit any hospital emergency room following the accident. To the extent that MD experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of MD on October 19, 2022, Integrated, J. Rodriguez, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented MD presented with problems of moderate severity during the examination.

(vii)   On November 20, 2022, an Insured named AL was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AL's vehicle was drivable following the accident. The police report further indicated that AL was not injured and did not complain of any pain at the scene. In keeping with the fact that AL was not seriously injured, AL did not visit any hospital emergency room following the accident. To the extent that AL experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of AL on December 6, 2022, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that AL presented with problems of moderate severity during the examination.

(viii)   On December 13, 2022, an Insured named DV was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DV's vehicle was drivable following the accident. The police report further indicated that DV was not injured and did not complain of any pain at the scene. In keeping with the fact that DV was not seriously injured, DV did not visit any hospital emergency room following the accident. To the extent that DV experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of DV on December 28, 2022, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that DV presented with problems of moderate severity during the examination.

(ix)   On December 19, 2022, an Insured named LC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LC's vehicle was drivable following the accident. The police report further indicated that LC was not injured and did not complain of any pain at the scene. In keeping with the fact that LC was not seriously injured, LC did not visit any hospital emergency room following the accident. To the extent that LC experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of LC on January 3, 2023, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that LC presented with problems of moderate severity during the examination.

(x)   On January 12, 2023, an Insured named EP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EP's vehicle was drivable following the accident. The police report further indicated that EP was not injured and did not complain of any pain at the scene. In keeping with the fact that EP was not seriously injured, EP did not visit any hospital emergency room following the accident. To the extent that EP experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of EP on January 24, 2023, Sanchez Health Care, Silvera, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that EP presented with problems of moderate severity during the examination.

(xi)   On February 3, 2023, an Insured named EP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EP's vehicle was drivable following the accident. The police report further indicated that EP was not injured and did not complain of

any pain at the scene. In keeping with the fact that EP was not seriously injured, EP did not visit any hospital emergency room following the accident. To the extent that EP experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of EP on April 4, 2023, Integrated, Carrillo, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that EP presented with problems of moderate severity during the examination.

(xii)    On August 17, 2023, an Insured named AC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AC's vehicle was drivable following the accident. The police report further indicated that AC was not injured and did not complain of any pain at the scene. In keeping with the fact that AC was not seriously injured, AC did not visit any hospital emergency room following the accident. To the extent that AC experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of AC on September 19, 2023, Complete Medical, Portal, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that AC presented with problems of moderate severity during the examination.

(xiii)   On November 14, 2023, an Insured named JA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JA's vehicle was not drivable following the accident. The police report further indicated that JA was not injured and did not complain of any pain at the scene. In keeping with the fact that JA was not seriously injured, JA did not visit any hospital emergency room following the accident. To the extent that JA experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of JA on December 21, 2023, Complete Medical, Portal, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that JA presented with problems of moderate severity during the examination.

(xiv)    On January 25, 2024, an Insured named AP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AP's vehicle was not drivable following the accident. The police report further indicated that AP was not injured and did not complain of any pain at the scene. In keeping with the fact that AP was not seriously injured, AP did not visit any hospital emergency room following the accident. To the extent that AP experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had

completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of AP on February 26, 2024, Complete Medical, Portal, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that AP presented with problems of moderate severity during the examination.

(xv)     On April 4, 2024, an Insured named RS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RS's vehicle was not drivable following the accident. The police report further indicated that RS was not injured and did not complain of any pain at the scene. In keeping with the fact that RS was not seriously injured, RS did not visit any hospital emergency room following the accident. To the extent that RS experienced any health problems at all as a result of the accident, they were of low or minimal severity, even at their onset, and were minimal or had completely resolved within 2-3 weeks of the accident. Even so, following a purported follow-up examination of RS on May 4, 2024, Complete Medical, Portal, and Ferguson billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that RS presented with problems of moderate severity during examination.

171.     These are only representative examples. In the claims for follow-up examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely falsely represented that the Insureds presented with problems of low to moderate severity and moderate to high severity in order to create a false basis for their charges for the examinations under CPT codes 99213 and 99214 because follow-up examinations under CPT codes 99213 and 99214 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity.

172.     In the claims for follow-up examinations identified in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely falsely represented that the Insureds presented with problems of low to moderate severity or moderate to high severity in order to create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**b.     Misrepresentations Regarding the Results of the Follow-Up Examinations**

173.     Pursuant to the CPT Assistant, the use of CPT code 99213 to bill for a follow-up examination represents – among other things – that the examining practitioner performed at least two of the following three components: (i) took an "expanded problem focused" patient history; (ii) conducted an "expanded problem focused" physical examination; and (iii) engaged in medical decision-making of "low complexity".

174.     Moreover, pursuant to the CPT Assistant, the use of CPT code 99214 to bill for a follow-up examination represents – among other things – that the examining practitioner performed at least two of the following three components during the examination: (i) took a "detailed" patient history; (ii) conducted a "detailed" physical examination; and (iii) engaged in medical decision-making of "moderate complexity".

175.     Though Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely billed for the purported follow-up examinations using CPT codes 99213 and 99214, neither Ferguson, R. Rodriguez, nor any other practitioner associated with Integrated, Sanchez Health Care, and Complete Medical took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

176.     Rather, in the claims identified in Exhibits "1" – "3", following the purported follow-up examinations, Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either (ii) caused the Insureds to be referred for even more medically unnecessary physical therapy services, despite the fact that the Insureds purportedly already had received extensive physical therapy services that supposedly

had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

177.   The putative "follow-up examinations" that Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal purported to provide the Insureds in the claims identified in Exhibits "1" – "3" therefore were medically useless, and played no legitimate role in the treatment or care of the Insureds, because the putative "results" of the examinations were pre-determined to comport with the medically unnecessary treatment plan that was pre-determined for each Insured from the moment they walked into Defendants' offices.

178.   In the claims for initial examinations in Exhibits "1" – "3", Integrated, J. Rodriguez, Carrillo, Ferguson, Sanchez Health Care, Silvera, Souto, Vazquez, Complete Medical, Garcia, and Portal routinely fraudulently misrepresented that the follow-up examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)    the putative follow-up examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)   the charges for the putative follow-up examinations misrepresented the nature and extent of the examinations; and

(iii)  Integrated, Sanchez Health Care, and Complete Medical never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in pervasive violation of Florida law.

**3.     The Fraudulent and Unlawful Charges for Physical Therapy at Integrated, Sanchez Health Care, Complete Medical, and Professional Health**

179.    In addition to the fraudulent initial examinations and follow-up examinations, Defendants virtually always purported to subject each of the Insureds in the claims identified in Exhibits "1" – "4" to months of medically unnecessary physical therapy.

180.    Specifically, Defendants caused virtually every Insured to receive two to five months of purported physical therapy services.

181.    In addition, Defendants caused virtually every Insured to receive substantially identical types of physical therapy services, including: (i) hot/cold packs; (ii) mechanical traction; (iii) manual therapy; (iv) ultrasound therapy; (v) electrical stimulation; (vi) neuromuscular reeducation; and (vii) paraffin bath therapy. See Exhibits "1" – "4".

182.    In the claims for physical therapy services identified in Exhibits "1" – 4", the charges for physical therapy services were fraudulent in that the misrepresented Defendants' eligibility to collect PIP Benefits in the first instance.

183.    In fact, and as set forth above, Defendants never were eligible to collect PIP Benefits, because of their fraudulent and unlawful activities.

184.    Furthermore, the purported physical therapy services that were billed through Integrated, Sanchez Health Care, Complete Medical, and Professional Health were unlawfully performed by massage therapists and/or unlicensed and unsupervised individuals, and unlawfully billed to GEICO.

185.    What is more, in a legitimate clinical setting, the individual physical therapy services that are provided to an individual patient should be tailored to that patient's individual circumstances and presentation.

186.    In keeping with the fact that the purported physical therapy services that were billed through Integrated, Sanchez Health Care, Complete Medical, and Professional Health were not

medically necessary, Defendants did not tailor the physical therapy services they purported to provide to each Insured's individual circumstances and presentation.

187.    There are a large number of individual types of physical therapy services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

188.    However, Defendants routinely purported to provide the same handful of physical therapy "treatments" to virtually every Insured in the claims identified in Exhibits "1" – 4", on substantially the same schedule, without regard for Insureds' individual circumstances.

189.    Specifically, Defendants purported to provide virtually every Insured in the claims identified in Exhibits "1" – 4" with two-to-five months of physical therapy services, consisting of hot/cold packs, mechanical traction, manual therapy, ultrasound therapy, electrical stimulation, neuromuscular reeducation, and paraffin bath therapy. This, despite the fact that the Insureds were differently situated, and could not possibly all have required a substantially identical course of physical therapy treatment.

## III.    The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

190.    To support their fraudulent charges, Defendants systematically submitted or caused to be submitted thousands of bills and treatment reports through Integrated, Sanchez Health Care, Complete Medical, and Professional Health to GEICO, containing thousands of individual charges, seeking payment for the Fraudulent Services for which Defendants were not entitled to receive payment.

191.    The claims that Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by Defendants uniformly misrepresented to GEICO that Defendants were in compliance with Florida law and therefore were eligible to collect PIP Benefits in the first instance, when in fact they were not.

(ii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact they were not.

(iii)   The HCFA-1500 forms and treatment reports submitted or caused to be submitted by Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)    The HCFA-1500 forms reports submitted by and on behalf of Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

## IV.   The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

192.    Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO.

193.    To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, Defendants systematically concealed their fraud and have gone to great lengths to accomplish this concealment.

194.    For instance, Defendants knowingly misrepresented and concealed facts in an effort to prevent discovery that Defendants operated in violation of Florida law and therefore were ineligible to collect PIP Benefits in the first instance.

195.    Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary, and frequently never were performed in the first instance.

196.    Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were oftentimes unlawfully performed by massage therapists and unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

197.    Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers if the charges were not promptly paid in full.

198.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $1,450,000.00.

199.    Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

**<u>FIRST CAUSE OF ACTION</u>**
**Against Integrated, Sanchez Health Care, Complete Medical, and Professional Health**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

200.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

201.    There is an actual case and controversy between GEICO and Integrated, Sanchez Health Care, Complete Medical, and Professional Health regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

202.    Integrated, Sanchez Health Care, Complete Medical, and Professional Health have no right to receive payment for any pending bills submitted to GEICO because they unlawfully were operated in violation of Florida law.

203.    Integrated, Sanchez Health Care, Complete Medical, and Professional Health have no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

204.    Integrated, Sanchez Health Care, Complete Medical, and Professional Health have no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

205.    Integrated, Sanchez Health Care, Complete Medical, and Professional Health have no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

206.    Integrated, Sanchez Health Care, Complete Medical, and Professional Health have no right to receive payment for any pending bills submitted to GEICO because the billing for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

207.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment, 28 U.S.C. §§ 2201 and 2202, declaring that Integrated, Sanchez Health Care, Complete Medical, and Professional Health have no right to receive payment for any pending bills submitted to GEICO.

## SECOND CAUSE OF ACTION
### Against J. Rodriguez and Carrillo
### (Violation of RICO, 18 U.S.C. § 1962(c))

208.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

209.     Integrated is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

210.     J. Rodriguez and Carrillo knowingly conducted and/or participated, directly or indirectly, in the conduct of Integrated's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Integrated was not eligible to receive under the No-Fault Law because: (i) Integrated unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich Defendants rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying

70

Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

211.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

212.    Integrated's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which J. Rodriguez and Carrillo operated Integrated, inasmuch as Integrated was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for Integrated to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Integrated, J. Rodriguez and Carrillo continue to attempt collection on the fraudulent billing submitted through Integrated to the present day.

213.    Integrated is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Integrated in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

214.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $540,000.00 pursuant to the fraudulent bills submitted through the Integrated enterprise.

215.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Against J. Rodriguez, Carrillo, and Ferguson**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

216.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

217.    Integrated is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

218.    J. Rodriguez, Carrillo, and Ferguson are employed by or associated with the Integrated enterprise.

219.    J. Rodriguez, Carrillo, and Ferguson knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Integrated's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Integrated was not eligible to receive under the No-Fault Law because: (i) Integrated unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

220.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

221.    J. Rodriguez, Carrillo, and Ferguson knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

222.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $540,000.00 pursuant to the fraudulent bills submitted through the Integrated enterprise.

223.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against Integrated, J. Rodriguez, Carrillo, and Ferguson**
**(Under Fla. Stat. 501.201 et. seq.)**

224.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

225.    Integrated, J. Rodriguez, Carrillo, and Ferguson are actively engaged in trade and commerce in the State of Florida.

226.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

227.    Integrated, J. Rodriguez, Carrillo, and Ferguson engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

228.     The bills and supporting documents submitted or caused to be submitted by Integrated, J. Rodriguez, Carrillo, and Ferguson to GEICO were fraudulent in that they misrepresented: (i) Integrated's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

229.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Integrated, J. Rodriguez, Carrillo, and Ferguson has been materially injurious to GEICO and its Insureds.

230.     The conduct of Integrated, J. Rodriguez, Carrillo, and Ferguson was the actual and proximate cause of the damages sustained by GEICO.

231.     Integrated, J. Rodriguez, Carrillo, and Ferguson's unfair and deceptive acts have caused GEICO to sustain damages of at least $540,000.00.

232.     By reason of Integrated, J. Rodriguez, Carrillo, and Ferguson's conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTH CAUSE OF ACTION**
**Against Integrated, J. Rodriguez, Carrillo, and Ferguson**
**(Common Law Fraud)**

233.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

234.     Integrated, J. Rodriguez, Carrillo, and Ferguson intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Integrated for the Fraudulent Services.

235. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Integrated was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

236. Integrated, J. Rodriguez, Carrillo, and Ferguson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Integrated that were not reimbursable.

237. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $540,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Integrated, J. Rodriguez, Carrillo, and Ferguson through Integrated.

238. Integrated, J. Rodriguez, Carrillo, and Ferguson's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

239. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Against Integrated, J. Rodriguez, Carrillo, and Ferguson
### (Unjust Enrichment)

240.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-199, above.

241.    As set forth above, Integrated, J. Rodriguez, Carrillo, and Ferguson have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

242.    When GEICO paid the bills and charges submitted or caused to be submitted by Integrated, J. Rodriguez, Carrillo, and Ferguson through Integrated, it reasonably believed that it was legally obligated to make such payments based Integrated, J. Rodriguez, Carrillo, and Ferguson's improper, unlawful, and/or unjust acts.

243.    Integrated, J. Rodriguez, Carrillo, and Ferguson have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Integrated, J. Rodriguez, Carrillo, and Ferguson voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

244.    Integrated, J. Rodriguez, Carrillo, and Ferguson's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

245.    By reason of the above, Integrated, J. Rodriguez, Carrillo, and Ferguson have been unjustly enriched in an amount to be determined at trial, but in no event less than $450,000.00.

## SEVENTH CAUSE OF ACTION
### Against Silvera, Souto, and Vazquez
### (Violation of RICO, 18 U.S.C. § 1962(c))

246.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

247.    Sanchez Health Care is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

248.    Silvera, Souto, and Vazquez knowingly have conducted and/or participated, directly or indirectly, in the conduct of Sanchez Health Care's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Sanchez Health Care was not eligible to receive under the No-Fault Law because: (i) Sanchez Health Care unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

249.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

250.    Sanchez Health Care's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Silvera, Souto, and Vazquez operated Sanchez Health Care, inasmuch as Sanchez Health Care was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Sanchez Health Care to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of

continued criminal activity, as does the fact that Sanchez Health Care, Silvera, Souto, and Vazquez continue to attempt collection on the fraudulent billing submitted through Sanchez Health Care to the present day.

251.    Sanchez Health Care is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Sanchez Health Care in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

252.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $390,000.00 pursuant to the fraudulent bills submitted through Sanchez Health Care.

253.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**Against Silvera, Souto, Vazquez, and Ferguson**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

254.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

255.    Sanchez Health Care is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

256.    Silvera, Souto, Vazquez, and Ferguson were employed by or associated with the Sanchez Health Care enterprise.

257.     Silvera, Souto, Vazquez, and Ferguson knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Sanchez Health Care's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Sanchez Health Care was not eligible to receive under the No-Fault Law because: (i) Sanchez Health Care unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; and (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

258.     A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

259.     Silvera, Souto, Vazquez, and Ferguson knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

260.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $390,000.00 pursuant to the fraudulent bills submitted through the Sanchez Health Care enterprise.

261.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
### Against Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson
### (Under Fla. Stat. 501.201 et. seq.)

262.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-199, above.

263.    Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson are actively engaged in trade and commerce in the State of Florida.

264.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

265.    Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

266.    The bills and supporting documents submitted by Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Sanchez Health Care's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

267.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson has been materially injurious to GEICO and its Insureds.

268.    The conduct of Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson was the actual and proximate cause of the damages sustained by GEICO.

269.    Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson's unfair and deceptive acts have caused GEICO to sustain damages of at least $390,000.00.

270.    By reason of Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**TENTH CAUSE OF ACTION**
**Against Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson**
**(Common Law Fraud)**

271.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

272.    Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Sanchez Health Care for the Fraudulent Services.

273.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Sanchez Health Care was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services

actually were performed, when in many cases they were not actually performed, when in many cases they were not actually performed. Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Sanchez Health Care that were not reimbursable.

274.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $390,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson through Sanchez Health Care.

275.    Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

276.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ELEVENTH CAUSE OF ACTION**
**Against Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson**
**(Unjust Enrichment)**

277.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-199, above.

278.    As set forth above, Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

279.     When GEICO paid the bills and charges submitted or caused to be submitted by the Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson through Sanchez Health Care it reasonably believed that it was legally obligated to make such payments based on Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson's improper, unlawful, and/or unjust acts.

280.     Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

281.     Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

282.     By reason of the above, Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson have been unjustly enriched in an amount to be determined at trial, but in no event less than $390,000.00.

**TWELFTH CAUSE OF ACTION**
**Against Garcia, and Portal**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

283.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

284.     Complete Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

285.     Garcia and Portal knowingly have conducted and/or participated, directly or indirectly, in the conduct of Complete Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Complete Medical was

not eligible to receive under the No-Fault Law because: (i) Complete Medical unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson; rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of service that purportedly were provided in order to inflate the charges submitted to GEICO.

286. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

287. Complete Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Garcia, and Portal operated Complete Medical, inasmuch as Complete Medical was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Complete Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Complete Medical, Garcia, and Portal continue to attempt collection on the fraudulent billing submitted through Complete Medical to the present day.

288. Complete Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers.

84

These inherently unlawful acts are taken by Complete Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

289.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $360,000.00 pursuant to the fraudulent bills submitted through Complete Medical.

290.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRTEENTH CAUSE OF ACTION**
**Against Garcia, Portal, and Ferguson**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

291.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

292.     Complete Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

293.     Garcia, Portal, and Ferguson were employed by or associated with the Complete Medical enterprise.

294.     Garcia, Portal, and Ferguson knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Complete Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Complete Medical was not eligible to receive under the No-Fault Law because: (i)

85

Complete Medical unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

295.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

296.    Garcia, Portal, and Ferguson knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

297.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $360,000.00 pursuant to the fraudulent bills submitted through the Complete Medical enterprise.

298.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTEENTH CAUSE OF ACTION**
**Against Complete Medical, Garcia, Portal, and Ferguson**

**(Under Fla. Stat. 501.201 et. seq.)**

299.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-199, above.

300.     Complete Medical, Garcia, Portal, and Ferguson are actively engaged in trade and commerce in the State of Florida.

301.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

302.     Complete Medical, Garcia, Portal, and Ferguson engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

303.     The bills and supporting documents submitted by Complete Medical, Garcia, Portal, and Ferguson to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Complete Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

304.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Complete Medical, Garcia, Portal, and Ferguson has been materially injurious to GEICO and its Insureds.

305.     The conduct of Complete Medical, Garcia, Portal, and Ferguson was the actual and proximate cause of the damages sustained by GEICO.

306.     Complete Medical, Garcia, Portal, and Ferguson's unfair and deceptive acts have caused GEICO to sustain damages of at least $360,000.00.

307.    By reason of Complete Medical, Garcia, Portal, and Ferguson's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTEENTH CAUSE OF ACTION**
**Against Complete Medical, Garcia, Portal, and Ferguson**
**(Common Law Fraud)**

308.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

309.    Complete Medical, Garcia, Portal, and Ferguson intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Complete Medical for the Fraudulent Services.

310.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Complete Medical was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; and (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed. Complete Medical, Garcia, Portal, and Ferguson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Complete Medical that were not reimbursable.

311.   Complete Medical, Garcia, Portal, and Ferguson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Complete Medical that were not reimbursable.

312.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $360,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Complete Medical, Garcia, Portal, and Ferguson through Complete Medical.

313.   Complete Medical, Garcia, Portal, and Ferguson's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

314.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### SIXTEENTH CAUSE OF ACTION
**Against Complete Medical, Garcia, Portal, and Ferguson**
**(Unjust Enrichment)**

315.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-199, above.

316.   As set forth above, Complete Medical, Garcia, Portal, and Ferguson have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

317.   When GEICO paid the bills and charges submitted or caused to be submitted by Complete Medical, Garcia, Portal, and Ferguson through Complete Medical it reasonably believed

that it was legally obligated to make such payments based on Complete Medical, Garcia, Portal, and Ferguson's improper, unlawful, and/or unjust acts.

318.    Complete Medical, Garcia, Portal, and Ferguson have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Complete Medical, Garcia, Portal, and Ferguson voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

319.    Complete Medical, Garcia, Portal, and Ferguson's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

320.    By reason of the above, Complete Medical, Garcia, Portal, and Ferguson have been unjustly enriched in an amount to be determined at trial, but in no event less than $360,000.00.

**SEVENTEENTH CAUSE OF ACTION**
**Against Linares**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

321.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

322.    Professional Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

323.    Linares knowingly have conducted and/or participated, directly or indirectly, in the conduct of Professional Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over one and a half years seeking payments that Professional Health was not eligible to receive under the No-Fault Law because: (i) Professional Health unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary

and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich Professional Health and Linares, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

324.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4".

325.    Professional Health's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Linares operated Professional Health, inasmuch as Professional Health was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Professional Health to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Professional Health continues to attempt collection on the fraudulent billing submitted through Professional Health to the present day.

326.    Professional Health is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Professional Health in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

327.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $155,000.00 pursuant to the fraudulent bills submitted through Professional Health.

328.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## EIGHTEENTH CAUSE OF ACTION
### Against Linares and Ferguson
### (Violation of RICO, 18 U.S.C. § 1962(d))

329.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

330.    Professional Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

331.    Linares and Ferguson were employed by or associated with the Professional Health enterprise.

332.    Linares and Ferguson knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Professional Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over one and a half years seeking payments that Professional Health was not eligible to receive under the No-Fault Law because: (i) Professional Health unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided

at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

333.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4". Each such mailing was made in furtherance of the mail fraud scheme.

334.    Linares and Ferguson knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

335.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $155,000.00 pursuant to the fraudulent bills submitted through the Professional Health enterprise.

336.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**NINETEENTH CAUSE OF ACTION**
**Against Professional Health, Linares, and Ferguson**
**(Under Fla. Stat. 501.201 et. seq.)**

337.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-199, above.

338.     Professional Health, Linares, and Ferguson are actively engaged in trade and commerce in the State of Florida.

339.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

340.     Professional Health, Linares, and Ferguson engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

341.     The bills and supporting documents submitted by Linares and Ferguson to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Professional Health's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

342.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Professional Health, Linares, Ferguson has been materially injurious to GEICO and its Insureds.

343.     The conduct of Professional Health, Linares and Ferguson was the actual and proximate cause of the damages sustained by GEICO.

344.     Professional Health, Linares, and Ferguson's unfair and deceptive acts have caused GEICO to sustain damages of at least $155,000.00.

345.     By reason of Professional Health, Linares, and Ferguson's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

<u>**TWENTIETH CAUSE OF ACTION**</u>
**Against Professional Health, Linares, and Ferguson**
**(Common Law Fraud)**

346.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-199, above.

347.    Professional Health, Linares, and Ferguson intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Professional Health for the Fraudulent Services.

348.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Professional Health was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

349.    Professional Health, Linares, and Ferguson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Professional Health that were not reimbursable.

350.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $155,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Professional Health, Linares, and Ferguson through Professional Health.

351.    Professional Health, Linares, and Ferguson's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

352.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-FIRST CAUSE OF ACTION
### Against Professional Health, Linares, and Ferguson
### (Unjust Enrichment)

353.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-200, above.

354.    As set forth above, Professional Health, Linares, and Ferguson have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

355.    When GEICO paid the bills and charges submitted or caused to be submitted by the Professional Health, Linares, and Ferguson through Professional Health it reasonably believed that it was legally obligated to make such payments based on the Professional Health, Linares, and Ferguson's improper, unlawful, and/or unjust acts.

356.    Professional Health, Linares, and Ferguson have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Professional Health, Linares, and Ferguson voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

357.    Professional Health, Linares, and Ferguson's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

358.    By reason of the above, Professional Health, Linares, and Ferguson have been unjustly enriched in an amount to be determined at trial, but in no event less than $155,000.00.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.      On the First Cause of Action against Integrated, Sanchez Health Care, Complete Medical, and Professional Health, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Integrated, Sanchez Health Care, Complete Medical, and Professional Health have no right to receive payment for any pending bills submitted to GEICO;

B.      On the Second Cause of Action against J. Rodriguez and Carrillo compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $540,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.      On the Third Cause of Action against J. Rodriguez, Carrillo, and Ferguson, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $540,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.      On the Fourth Cause of Action against Integrated, J. Rodriguez, Carrillo, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $540,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.      On the Fifth Cause of Action against Integrated, J. Rodriguez, Carrillo, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $540,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.      On the Sixth Cause of Action against Integrated, J. Rodriguez, Carrillo, and Ferguson, more than $540,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

G.      On the Seventh Cause of Action against Silvera, Souto, and Vazquez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $390,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.      On the Eighth Cause of Action against Silvera, Souto, Vazquez, and Ferguson, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $390,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.      On the Ninth Cause of Action against Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $390,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

J.      On the Tenth Cause of Action against Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $390,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

K.     On the Eleventh Cause of Action against Sanchez Health Care, Silvera, Souto, Vazquez, and Ferguson, more than $390,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

L.     On the Twelfth Cause of Action against Garcia, Portal, and Ferguson, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $360,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

M.     On the Thirteenth Cause of Action against Garcia, Portal, and Ferguson, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $360,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

N.     On the Fourteenth Cause of Action against Complete Medical, Garcia, Portal, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $360,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

O.     On the Fifteenth Cause of Action against Complete Medical, Garcia, Portal, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $360,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

P.     On the Sixteenth Cause of Action against Complete Medical, Garcia, Portal, and Ferguson, more than $360,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Q.      On the Seventeenth Cause of Action against Linares, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $155,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

R.      On the Eighteenth Cause of Action against Linares and Ferguson, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $155,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

S.      On the Nineteenth Cause of Action against Professional Health, Linares, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $155,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

T.      On the Twentieth Cause of Action against Professional Health, Linares, and Ferguson, compensatory damages in an amount to be determined at trial but in excess of $155,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

U.      On the Twenty-First Cause of Action against Professional Health, Linares, and Ferguson, more than $155,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: December 10, 2024

*/s/ Kristen Wenger*
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Kristen Wenger (FBN 92136)
Lindsey R. Trowell (FBN 678783)
RIVKIN RADLER, LLP
Riverplace Tower
1301 Riverplace Blvd.
Suite 1000
Jacksonville, FL 32207
Phone: (904) 791-8948
Facsimile: (904) 598-6225
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Kristen.Wenger@rivkin.com
Lindsey.Trowell@rivkin.com
*Counsel for Plaintiffs*